IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:25-CV-00101-KDB-DCK

| | |
|---|---|
| DANIEL M. THELEN,<br><br>   Plaintiff,<br><br>   v.<br><br>FIRST CHOICE PROFESSIONALS, LLC,<br><br>   Defendant. | **<u>MEMORANDUM AND ORDER</u>** |

**THIS MATTER** is before the Court on Defendant First Choice Professionals, LLC's Motion to Dismiss (Doc. No. 11), or in the alternative, to transfer this post-employment contract dispute to Arizona, pursuant to a forum selection clause contained in the Employment Agreement. The Court has carefully considered this motion, and the parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** the motion to dismiss but will **GRANT** the motion to transfer.

      **I.**     **LEGAL STANDARD**

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a party may move to dismiss an action for improper venue. *See* Fed. R. Civ. P. 12(b)(3); *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 209 (4th Cir. 2007). When venue is challenged under Rule 12(b)(3), the burden rests with the plaintiff to demonstrate that venue is proper. *Peguero v. Halal Food Cart, LLC*, No. 3:24-CV-00281-MOC-DCK, 2024 WL 3730647, at *1 (W.D.N.C. Aug. 8, 2024). To withstand such a motion, however, the plaintiff need only make a "prima facie showing of proper venue." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citing *Mitrano v. Hawes*, 377

1

F.3d 402, 405 (4th Cir. 2004)). In evaluating whether the plaintiff has met this burden, the court must view the facts in the light most favorable to the plaintiff. *Id.* Moreover, in resolving a Rule 12(b)(3) motion, the court may consider evidence outside the pleadings. *Id.* at 365–66.

## II.     FACTS AND PROCEDURAL HISTORY

In July 2022, Defendant First Choice Professionals, LLC, d/b/a First Health Advisory ("FHA") hired Plaintiff Daniel Thelen to work remotely as its Chief Operating Officer, a relationship which was memorialized with an Employment and Confidentiality Agreement ("Employment Agreement"). Doc. No. 1-2 ¶ 8. As consideration for entering the Employment Agreement, FHA granted Thelen 99,999 Deferred Compensation Units ("DCUs") pursuant to the terms of FHA's Deferred Compensation Plan ("DCU Plan") and Agreement ("DCU Agreement"). Doc. No. 12-1 at 2. The Employment Agreement contained choice of law, forum selection, and integration clauses, including, "[t]he laws of the State of Arizona shall govern all matters arising under or related to this Agreement, without reference to conflicts of laws principles;" "[t]he parties consent to a court of competent jurisdiction located in Maricopa County, Arizona, as having the sole and exclusive jurisdiction of any and all controversies that may arise under this Agreement …. Each party waives any objection it might otherwise have to venue, personal jurisdiction, inconvenience of forum;" and "[t]his Agreement and any exhibits constitute the entire agreement between the parties concerning its subject matter, superseding all prior negotiations and discussions …." Doc. No. 12-1 at 6–7.

Contemporaneously with the Employment Agreement, Thelen signed the DCU Agreement, which set forth the initial value of each DCU, the vesting schedule, and other provisions. *See* Doc. Nos. 1-2 ¶ 11; 12-2. The DCU Agreement contained a choice of law provision, stating, "[a]ll questions relating to the execution, interpretation and performance of this

Agreement shall be governed by the laws of the State of Arizona." Doc. No. 12-2 at 5. The DCU Agreement also specified that "any dispute or disagreement which may arise under, or as a result of, or in connection with this Agreement or the Plan shall be conclusively resolved in the manner set forth in the Plan." Doc. No. 12-2 at 4.

Similarly, the DCU Plan defines the terms contained in the DCU Agreement, explains how DCUs are paid out in the event of separation from service, and while it contains no dispute resolution provisions, explains "[a]s a condition to receiving payment of any DCU benefits hereunder, the Participant must comply (and continue to comply) with all of the terms and conditions set forth in any employment … or other agreement executed between Company … and the Participant." Doc. No. 12-3 at 9–10.

After Thelen's position was eliminated, a Severance Agreement was generated, explaining that pursuant to the DCU Agreement, the fully vested DCUs would be paid out in three installments on an annual basis beginning in May 2025. *See* Doc. Nos. 1-2 ¶ 18; 12-3 at 9–10; 12-4 at 1. However, before the first annual payment was due, Thelen alleges he received notice that FHA would not be honoring the Severance Agreement due to "irregularities and findings" that it did not explain. Doc. No. 1-2 ¶¶ 20–21. Thelen demanded performance under the Severance Agreement, and when FHA failed to pay him the first annual payment, he filed suit in May 2025, in the Watauga County Superior Court for North Carolina, alleging breach of the DCU and Severance Agreements and violation of the North Carolina Wage and Hour Act ("NCWHA"). *Id.* ¶ 26. In June 2025, FHA removed the matter to this Court, based on diversity jurisdiction under 28 U.S.C.

3

§ 1332(b), explaining that venue was proper under 28 U.S.C. § 1441(a), because this federal district includes the state court in which Thelen first filed the action.[1] Doc. No. 1 at 3.

Shortly thereafter, FHA moved to dismiss the matter pursuant to Federal Rule of Civil Procedure 12(b)(3) and Section 1406(a). *See* Doc. No. 11. Thelen opposed the Motion (*see* Doc. No. 13), explaining that under the Supreme Court precedent in *Atlantic Marine,* 12(b)(3) and Section 1406(a) do not provide a basis to enforce a forum selection clause. In its reply, FHA conceded *Atlantic Marine* to be binding precedent and asked the Court to dismiss under 12(b)(3) or transfer under Section 1404(a). *See* Doc. No. 14. The Court directed Thelen to file a surreply—if desired—addressing FHA's Section 1404(a) argument, which he filed on November 12, 2025. *See* Doc. No. 16. Accordingly, the matter is now ripe for this Court's review.

### III.   DISCUSSION

As an initial matter, the Court notes that dismissal of this action pursuant to Rule 12(b)(3) or transfer pursuant to 28 U.S.C. § 1406(a) would be improper. The Supreme Court has emphasized that § 1404(a) provides the exclusive vehicle for enforcing a forum selection clause designating another federal forum, where venue is otherwise proper in the district of filing.[2] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 52 (2013) ("We reject petitioner's argument that [a forum selection] clause may be enforced by a motion to dismiss under 28 U.S.C. § 1406(a) or Rule 12(b)(3) of the Federal Rules of Civil Procedure.").

---

[1] While there is some dispute as to FHA's principal place of business, it alleges it was organized under Arizona law as an LLC until it changed its name and registered as an LLC in Delaware in 2024, well after the Agreements were executed. Doc. No. 1 at 2.

[2] Venue is otherwise proper in this district because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(b)(2). Thelen alleges that he is a citizen and resident of North Carolina and worked remotely for FHA as its Chief Operating Officer from North Carolina. Doc. No. 1-2 ¶ 8.

Accordingly, FHA's Motion to Dismiss will be denied, as will its Motion to Transfer pursuant to Section § 1406(a).

Absent a valid mandatory forum selection clause, "a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The § 1404(a) analysis changes, however, when a valid and mandatory forum selection clause is present. In *Atlantic Marine*, the Supreme Court emphasized that the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)). Further, a valid forum selection clause reflects the parties' agreement as to the most proper forum. *Id.*

*Atlantic Marine* makes clear that "a proper application of § 1404(a) requires that a forum selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59–60 (quoting *Stewart,* 487 U.S. at 33). When a forum selection clause is valid, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 64. Thus, the threshold inquiry under *Atlantic Marine* is whether the forum selection clause is enforceable—that is, whether it is "applicable to the claims at issue, valid, and mandatory." *Sharpe v. Ally Fin., Inc.*, No. 3:17CV189-GCM, 2017 WL 5078900, at *2 (W.D.N.C. Nov. 3, 2017). Thelen disputes both the validity of the forum selection clause and its applicability to his breach of contract and NCWHA claims.

### A. The Forum Selection Clause is Mandatory

Although the parties have not disputed the issue, the Court must first consider whether the forum selection clause is mandatory or permissive. In construing forum selection clauses, federal

5

courts look to (and follow) the clause's precise language—specifically, whether it permits another forum as an alternative to the forum of litigation or instead designates the chosen forum as exclusive. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650–51 (4th Cir. 2010) (citing *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007)). Indeed, "[a] general maxim in interpreting forum selection clauses is that 'an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion.'" *Id.* at 51 (quoting *IntraComm,* 492 F.3d at 290) (citation omitted).

The language of the forum selection clause contained in the Employment Agreement is clearly mandatory. It states that a court of competent jurisdiction in Maricopa County, Arizona has the "sole and exclusive jurisdiction over any and all controversies …." Doc. No. 12-1 at 6. *See Bartels by & through Bartels v. Saber Healthcare Grp*., LLC, 880 F.3d 668, 671–72 (4th Cir. 2018) (finding a forum selection clause to be mandatory when it stated: "the county in which the Facility is located shall be the sole and exclusive venue for any dispute between the parties").

## B. The Forum Selection Clause is Applicable to the Claims at Issue

Thelen's first challenge asserts that the forum selection clause does not encompass his breach of contract and NCWHA claims arising under the DCU and Severance Agreements, because those claims do not, in turn, arise under the Employment Agreement. Doc. Nos. 14, 16.

The Court disagrees. "Phrases such as 'arising out of' and 'connected with' are expressly broad." *United States v. Tourtellot*, 483 B.R. 72, 86 (M.D.N.C. 2012) (quoting *Long v. Silver,* 248 F.3d 309, 313 (4th Cir.2001)) (explaining that an arbitration clause covering "[a]ny and all disputes ... arising out of or in connection with" was "very broad"). Although narrower in scope, *see Nissan Fire & Marine Ins. Co., Ltd. v. Fortress Re, Inc.*, No. 1:02CV00054, 2002 WL 737789, at *2 (M.D.N.C. Feb. 25, 2002), the term "arising under" is still considered broad, because it covers "a

6

broad range of issues." *Thomas v. Matrix Sys. Auto. Finishes, LLC*, No. CIV.A.6:09-2169HFF, 2010 WL 147956, at *7 (D.S.C. Jan. 14, 2010) (citations omitted). In assessing whether a claim "arises under" a contract, the Fourth Circuit instructs courts to examine whether the claims bear a direct nexus to the contractual obligations and, more specifically, whether they implicate the interpretation or performance of the contract itself. *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *11 (D. Md. June 6, 2024), *motion to certify appeal on other grounds granted,* No. CV 20-1094-BAH, 2024 WL 5158791 (D. Md. Dec. 18, 2024) (citing *Evans v. Bldg. Materials Corp. of Am.*, 858 F.3d 1377, 1381 (Fed. Cir. 2017) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92–93 (4th Cir. 1996))).

Here, the Employment Agreement expressly provides that the DCUs constituted part of the consideration offered to Thelen for entering into the contract. Doc. No. 12-1 at 1. It specifies the number of DCUs to be issued, which it makes subject to the "terms and conditions specified in [the DCU Plan and Agreement]." *Id.* at 2. Accordingly, the DCU Agreement and Plan arise under, and are effectively incorporated into, the Employment Agreement. Moreover, the Severance Agreement affirms FHA's obligation to honor the DCU Agreement, confirms the vesting status of Thelen's DCUs, and describes their value and the manner of payout—all in accordance with the DCU Agreement and Plan. Therefore, disputes related to the Severance Agreement similarly arise under the DCU governing framework, which in turn makes them subject to the forum selection clause as explained above.

Thelen next contends that even if the forum selection clause applies to his breach of contract claims, the NCWHA claim is based on an independent statutory right and is therefore outside the clause's scope. Doc. Nos. 13 at 6; 16 at 2. In support, Thelen urges the Court to adopt the reasoning in *Peguero,* which concluded that FLSA claims (related to overtime and tip

7

disgorgement) did not arise out of an employment agreement because they were "based on an independent statutory right." 2024 WL 3730647, at *2. Similarly, *Pacheco v. St. Luke's Emergency Associates, P.C.*, 879 F. Supp. 2d 136, 141 (D. Mass. 2012)—cited by the *Peguero* Court—held that FLSA claims were not subject to an employment agreement's forum selection clause because the claims did not "depend on the existence" of the agreement or "relate to its interpretation." Here, by contrast, the Employment and DCU Agreements expressly set forth the number of DCUs granted; the DCU Agreement and Plan delineate the vesting schedule and payout upon separation; the DCU Agreement establishes the initial value of each unit; and the Severance Agreement calculates their value at termination. Moreover, the Severance Agreement makes payment conditional on the absence of "untoward actions" against FHA. Taken together with the broad language of the forum selection clause, these provisions demonstrate that the NCWHA claims not only bear a direct nexus to the Agreements but also turn on their interpretation and performance. *See Sharpe,* 2017 WL 5078900, at *3 (FLSA and NCWHA claim subject to forum selection clause where it contains broad language and set out the plaintiff's wage and overtime rates); *Flahive v. VONQ, Inc.*, No. 5:24-CV-323-FL, 2024 WL 4843729, at *2–3 (E.D.N.C. Nov. 20, 2024) (holding that the NCWHA claim falls within a broadly worded forum selection clause and rejecting plaintiff's Section 22B-3 public policy challenge).

### C. The Forum Selection Clause is Valid

The Parties' second disputed issue is whether the forum selection clause is valid. "Since its seminal decision in *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d (1972),"[3] the Supreme Court has consistently recognized forum selection and choice of law

---

[3] Although *Bremen* was an admiralty case, its rationale is broadly applicable to forum selection clauses. *Albemarle,* 628 F.3d at 649–50 (first citing *Bryant Elec. Co. v. City of*

8

provisions as presumptively valid, "rejecting the 'parochial concept' that 'notwithstanding solemn contracts ... all disputes must be resolved under our laws and in our courts.'" *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quoting *Bremen,* 407 U.S. at 9) (citations omitted). The presumption, however, is not absolute. *Bremen,* 407 U.S. at 10. It may be overcome upon a clear showing that the provision is "unreasonable under the circumstances." *Id.* Specifically, a forum selection or choice of law clause may be deemed unreasonable where: (1) its formation was procured by "fraud or overreaching;" (2) enforcement would, in practical effect, deprive the complaining party of a day in court due to grave inconvenience or unfairness; (3) the chosen law is fundamentally unfair and would deprive the plaintiff of a remedy; or (4) "enforcement would contravene a strong public policy of the forum state." *Allen,* 94 F.3d at 928 (first citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); and then citing *Bremen,* 407 U.S. at 12–13, 15, 18).

Thelen first asserts that the forum selection clause is unreasonable because it would be "grave[ly] inconvenient[t]" to have to litigate in Arizona. Doc. No. 13 at 9–10. In *Cable–La, Inc. v. Williams Communications, Inc.,* 104 F. Supp. 2d 569, 577 (M.D.N.C. 1999), the court identified eleven factors relevant to assessing the "inconvenience" posed by a forum selection clause. The eleven factors include: "(1) the plaintiff's initial choice of forum; (2) the relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witness; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgement, if one is

---

*Fredericksburg,* 762 F.2d 1192, 1196 (4th Cir. 1985) ("[T]his Court has applied [*Bremen's*] reasoning in diversity cases not involving international contracts"); and then citing *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.,* 696 F.2d 315, 317–18 (4th Cir. 1982); and then citing *Stewart,* 487 U.S. at 33) ("Although our opinion in *The Bremen* involved a Federal District Court sitting in admiralty, its reasoning applies with much force to federal courts sitting in diversity")).

obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws." *Id.*

Thelen alleges that factors one, two, three, six, seven, nine, ten, and eleven "weigh strongly in favor of venue in North Carolina and against venue in Arizona." Doc. No. 13 at 10. Again, the Court disagrees. During much of the time that Thelen worked remotely from North Carolina, FHA was organized in Arizona, where his employment record and other documents are likely to be maintained. To be sure, it is far more probable that Thelen's employment file, signed agreements and other evidentiary materials are stored in Arizona, and that FHA's human resources, leadership and corporate witnesses are located there, rather than in North Carolina. At worst, even if certain materials or witnesses are not in Arizona, litigating or conducting discovery in Arizona is no more inconvenient than proceeding in North Carolina, particularly with respect to corporate records and personnel. Thus, factors two and three do not weigh strongly in favor of North Carolina.

Next, although Thelen asserts that neither party currently resides in Arizona, the parties plainly contemplated the possibility of travel to the designated forum when entering the Employment Agreement. Moreover, both parties are sophisticated, and unlike an average employee who might be burdened by travel for litigation, Thelen served as a highly compensated, chief-level executive. Accordingly, factors six and seven do not weigh strongly in favor of North Carolina, and are, at most, neutral. In addition, while North Carolina law appears to govern[4] the

---

[4] The Court need not and does not reach the question of whether the broad choice of law clause would require reference to a similar Arizona state wage and hour law.

NCWHA claim, the Employment Agreement makes clear that Arizona law will govern the breach of contract claims. *See* Doc. No. 12-1. As a result, factors ten and eleven are neutral.

Thelen also contends that enforcement of the forum selection clause would contravene the public policy of North Carolina as reflected in N.C. Gen. Stat. § 22B-3. Doc. No. 13 at 12–13. This argument, however, is not dispositive. The Supreme Court in *Stewart* made clear that the validity of a forum selection clause is governed by federal law, and that a clause's inconsistency with the public policy of the forum is merely one factor in a broader, multi-factor analysis—not a basis, standing alone, to invalidate the clause. 487 U.S. at 30. Consistent with *Stewart*, federal courts in North Carolina have repeatedly held that § 22B-3 does not render a freely negotiated forum selection clause unenforceable. *See, e.g.*, *Scholl v. Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 241–42 (W.D.N.C. 2008) (noting that North Carolina district courts have consistently found the statute non-dispositive); *Peltier v. Mathis*, No. 1:15CV133, 2016 WL 4386091, at *6 (W.D.N.C. June 23, 2016), report and recommendation adopted, 2016 WL 4411510 (W.D.N.C. Aug. 16, 2016) (same).

Indeed, "Federal Courts in North Carolina routinely enforce forum-selection clauses despite the existence of [§] 22B-3." *Peltier*, 2016 WL 4386091, at *6; *see Waycaster Tire Serv., Inc. v. United Cmty. Bank*, No. 1:22-CV-269-MOC, 2023 WL 2672825, at *3 (W.D.N.C. Mar. 28, 2023); *Sharpe,* 2017 WL 5078900, at *4. The Fourth Circuit has likewise upheld enforcement of forum selection clauses notwithstanding similar state statutes. *See Albemarle,* 628 F.3d at 645; *Allen,* 94 F.3d at 928. Thus, while § 22B-3 may be considered in the reasonableness inquiry, it does not, by itself, invalidate an otherwise valid forum selection clause under federal law.

Although factor nine—as applied to the NCWHA claim, which considers the local interest in having localized controversies settled at home—weighs in favor of North Carolina, ultimately,

Thelen has shown only that litigating in Arizona may be inconvenient. Mere inconvenience, however, is insufficient to render a forum selection clause unreasonable. Accordingly, the Court finds the Parties' bargained for forum selection clause to be valid and reasonable.

### D. **§ 1404(a) Transfer Analysis**

Finally, unlike a typical § 1404(a) analysis—where "the court must weigh relevant factors" to determine whether, on balance, a transfer would serve the "convenience of parties and witnesses" and otherwise promote the "interest of justice"—when a valid forum selection clause governs, only public, not private, factors may be considered. *True Homes LLC v. Clayton Homes, Inc.*, No. 318CV00345KDBDCK, 2020 WL 4432849, at *3 (W.D.N.C. July 31, 2020) (quoting *Atl. Marine*, 571 U.S. at 62–64). In effect, such a clause reverses the usual presumptions: rather than favoring the plaintiff's chosen forum, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* (quoting *Atl. Marine*, 571 U.S. at 62–64). This is because "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum ... [they] agreed to ... was clearly foreseeable at the time of contracting." *Atl. Marine*, 571 U.S. at *Id.* at 64 (quoting *Bremen,* 407 U.S. at 17–18).

Still, disregarding the plaintiff's choice of forum and any private convenience factors "does not end the inquiry." *Id.* "Public interests and the overall interest of justice" remain relevant. *Id.* These public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home;" (3) the interest in trying a diversity case in a forum familiar with the governing law; "(4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quoting *Brown v. Advanced Digital Sols., LLC*, No. 517CV00034RLVDSC, 2017 WL 3838640, at *9 (W.D.N.C. Sept. 1,

2017)). "However, the public interest factors rarely defeat a transfer motion when a mandatory forum selection clause exists." *Brown,* 2017 WL 3838640, at *10.

The Court finds that on balance, the interests of justice and the public interests are served by transferring the matter to the United States District Court for the District of Arizona. Factor one supports transfer. The Western District of North Carolina has a substantial backlog of civil matters, which could delay timely adjudication of the dispute. The remaining factors are neutral. Thelen's claims arise under the Employment Agreement, which specifies that Arizona law governs disputes. An Arizona court is indisputably better situated to apply Arizona law to the breach of contract claims, while North Carolina is better situated to apply North Carolina law to the NCWHA claim. Also, there is a "local interest" in having the Arizona breach of contract claims decided in Arizona, just as there is a "local interest" in having the NCWHA claim decided in North Carolina.

In sum, Thelen has failed to show either that the forum selection clause is inapplicable or invalid, or that his case presents the kind of "exceptional" circumstance that would justify declining to enforce it. *Atl. Marine*, 571 U.S. at 52. Accordingly, pursuant to § 1404(a), the Court will transfer the matter to the United States District Court for the District of Arizona.

## IV.   ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 11) is **DENIED;**

2. Defendant's Motion to Transfer (Doc. No. 11) is **GRANTED**; and

3. The Clerk is directed to transfer the matter to the United States District Court for the District of Arizona.

**SO ORDERED ADJUDGED AND DECREED**.   Signed: December 17, 2025

Kenneth D. Bell
United States District Judge