**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel M. Thelen,<br>Plaintiff,<br>v.<br>First Choice Professionals, LLC d/b/a First Health Advisory,<br>Defendant. | No. CV-25-04985-PHX-SHD<br>**ORDER** |

Pending is Defendant First Choice Professionals, LLC d/b/a First Health Advisory's ("First Health") Motion to Dismiss Plaintiff Daniel M. Thelen's First Amended Complaint ("Motion"). (Doc. 30.) For the following reasons, First Health's motion to dismiss will be **denied**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Daniel M. Thelen ("Thelen") and First Health (collectively, "the Parties") entered into an Employment and Confidentiality Agreement (the "Employment Agreement") on or around July 18, 2022. (Doc. 27 at ¶ 8.) Under the Employment Agreement, First Health agreed to hire Thelen as its Chief Operating Officer. (*Id.*) Thelen had previously served as First Health's Vice President and Executive Vice President. (*Id.*) Thelen performed most of his services for First Health from his office in North Carolina. (*Id.*)

The Employment Agreement also provides that Thelen would receive compensation

in the form of 99,999 deferred compensation units ("DCUs"). (*Id.* at ¶ 12.) The Employment Agreement provides that Arizona law governs "all matters arising under or related to" the agreement and includes a forum selection clause for Maricopa County, Arizona as the "sole and exclusive jurisdiction." (Doc. 27-1 at 7.)

In addition to the Employment Agreement, Thelen also entered into a Deferred Compensation Unit Agreement, which incorporated and was governed by First Health's Deferred Compensation Unit Plan. (Doc. 27 at ¶ 13.) The Deferred Compensation Unit Agreement and the Deferred Compensation Unit Plan are collectively referred to as the "DCU Agreement." Under the DCU Agreement, First Health agreed to compensate Thelen with 99,999 DCUs at a base value of $1.70. (*Id.* at ¶ 14.) The DCU Agreement outlines that half of the DCUs would vest immediately upon executing the agreement, while the other half would vest upon the 1-year anniversary of the agreement. (*Id.*) The agreement also provides that Thelen would become entitled to a payout of his vested DCUs if his employment ended for any reason other than a "Termination For Cause" or "Resignation without Notice," as those terms are defined in the DCU Agreement. (*Id.* at ¶ 15.)

On May 2, 2024, First Health terminated Thelen's employment, citing "position elimination," which did not qualify as either a "Termination For Cause" or a "Resignation without Notice" under the DCU Agreement. (*Id.* at ¶¶ 18–19.) Contemporaneously with Thelen's termination, the Parties entered into a Severance Acceptance and General Release (the "Severance Agreement"). (*Id.* at ¶ 20.) Under the Severance Agreement, First Health agreed to pay Thelen his vested DCUs in three annual installments of $51,999.48 each, due no later than May 2, 2025, May 2, 2026, and May 2, 2027, respectively. (*Id.*; Doc. 27-3 at 1.) The Severance Agreement states that Thelen agreed to conduct himself professionally and that "untoward actions against the Company could result" in termination of the severance payment. (Doc. 27-3 at 2.)

On April 18, 2025, shortly before the first $51,999.48 installment was due, First Health sent Thelen a letter via email informing Thelen that it would not honor the DCU Agreement or the Severance Agreement. (Doc. 27 at ¶ 26.) First Health claimed it was

permitted to withhold the first installment and to terminate the DCU agreement, citing unspecified "irregularities and findings" discovered after Thelen's termination, without identifying any supporting facts. (*Id.* at ¶ 27.) First Health did not provide any additional facts or details regarding these "irregularities and findings." (*Id.*)

On May 1, 2025, Thelen's counsel sent First Health a demand letter asserting that Thelen was entitled to payment and warning that continued nonpayment would violate the North Carolina Wage and Hour Act ("NCWHA"). (*Id.* at ¶ 29.) First Health did not pay the first installment when it became due on May 2, 2025. (*Id.* at ¶ 30.) Thelen further alleges that First Health repudiated its obligation to make any future payments under the Severance Agreement and DCU Agreement. (*Id.* at ¶¶ 26, 31.)

Thelen filed this action in North Carolina state court on May 27, 2025, asserting claims against First Health for violation of the North Carolina Wage and Hour Act ("NCWHA") and breach of contract. (Doc. 1-2.) First Health removed the action to the United States District Court for the Western District of North Carolina. (Doc. 1.) First Health then moved to dismiss for improper venue under Rule 12(b)(3) or, alternatively, to transfer venue to the District of Arizona under 28 U.S.C. § 1404(a). (Doc. 11.) On December 18, 2025, Judge Kenneth D. Bell denied First Health's motion to dismiss for improper venue and granted First Health's motion to transfer the case to this District. (Doc. 17.)

On January 23, 2026, First Health moved to dismiss Thelen's original complaint under Rule 12(b)(6). (Doc. 21.) Thelen then filed a First Amended Complaint ("FAC") as of right under Rule 15(a)(1)(B). (Doc. 27.) In the FAC, Thelen reasserts the same two claims: NCWHA violation (Count 1) and breach of contract (Count 2). I deemed First Health's first motion to dismiss moot on February 13, 2026, given Thelen's FAC. (Doc. 28.) First Health renewed its motion to dismiss on February 27, 2026, this time directed at the operative FAC. (Doc. 30.)

Although First Health seeks dismissal of the FAC "in its entirety," (*id.* at 1), it only

attacks Count 1 and fails to identify a pleading deficiency in Count 2.[1] (*See id.*) The Parties fully briefed the Motion. (Docs. 31, 32.)[2]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation modified)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and [] a recovery is very remote and unlikely." *Id.* at 556 (citation modified).

## III. DISCUSSION

First Health argues that Thelen's wage and hour claim should be dismissed for the following reasons: (1) Arizona law governs the wage claim; (2) Thelen released and waived all claims against First Health; (3) the severance payment does not constitute wages; (4) First Health withheld the severance payment over a good-faith dispute; and (5) Thelen's

---

1 Because First Health does not address Count 2, I deny the Motion as to that claim. Furthermore, even if I were to construe First Health's argument that Plaintiff did not sufficiently plead conditions precedent as a challenge to the sufficiency of Count 2, I would reject that argument because plaintiffs may generally allege conditions precedent. *See* Fed. R. Civ. P. 9(c).

2 The Parties did not request oral argument, and it is not necessary, so this motion is decided without holding a hearing. *See* LRCiv 7.2(f).

wage claim is time-barred under Arizona's Statute of Limitations. (Doc. 30 at 4–7.)[3]

### A. Arizona Law Does Not Govern Claims Arising from the Severance Agreement

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Arizona follows Restatement (Second) of Conflict of Laws § 187 in deciding whether to enforce a contractual choice-of-law provision. *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992). Under § 187(1), the law selected by the parties governs if "the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Id.* (quoting Restatement (Second) of Conflict of Laws § 187(1)). If the issue is not one the parties could have resolved by express agreement, § 187(2) supplies the applicable limitations on enforcing the chosen law. *Id.*

The Employment Agreement and the DCU Agreement each contain an express Arizona choice-of-law provision. The Employment Agreement provides that "[t]he laws of the State of Arizona shall govern all matters arising under or related to this Agreement, without reference to conflicts of laws principles." (Doc. 27-1 at 7.) The DCU Agreement likewise provides that "[a]ll questions relating to the execution, interpretation and performance of this Agreement shall be governed by the laws of the State of Arizona, except to the extent preempted by federal law." (Doc. 27-2 at 6.)

Thus, if the Parties' dispute (a) arises under the Employment or DCU Agreements and (b) is one they "could have resolved by an explicit provision in their agreement directed to that issue," then Arizona law governs the dispute. *Cardon*, 841 P.2d at 202. The Parties could have expressly determined the interpretation, performance, and enforcement of the compensation obligations established in the Employment and DCU Agreements, and they

---

[3] I consider the agreements attached to the FAC as part of the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("A court may [] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

did so. *See id.*; *see also Swanson v. The Image Bank, Inc.*, 77 P.3d 439, 442 (Ariz. 2003) Because the payment obligations created by those agreements are matters the Parties could have resolved by an explicit contractual provision, Arizona law applies under Restatement § 187(1).[4]

Accordingly, to the extent Thelen seeks to assert a North Carolina wage claim based on a payment obligation created by the Employment Agreement or the DCU Agreement themselves, the Parties' express selection of Arizona law controls. Thelen therefore cannot pursue an NCWHA claim based on alleged compensation independently owed under either of those agreements.

Thelen, however, does not base his wage claim on the Employment Agreement and DCU Agreement, but on the later Severance Agreement.[5] The Severance Agreement is based on a letter from First Health to Thelen which states the document "will constitute the agreement" between the Parties concerning the terms of Thelen's separation, and it became effective upon Thelen's signature. (Doc. 27-3 at 1.) The agreement independently addresses the termination of Thelen's employment, his severance pay, accrued compensation, benefits, post-separation conduct, and a release and waiver of claims against the company. (*Id.* at 1–2.)

The Severance Agreement does not contain an Arizona choice-of-law provision. The Severance Agreement's reference to the DCU Agreement also does not, by itself, establish incorporation of the earlier agreement's choice-of-law provision. Incorporation

---

[4] Because § 187(2) only applies in cases where the parties could not have resolved an issue through an explicit provision in an agreement, I need not reach § 187(2)'s substantial-relationship and fundamental-policy limitations.

[5] The Parties dispute whether the Severance Agreement is a standalone agreement or instead part of the Parties' preexisting Employment and DCU Agreements. (*Compare* Doc. 30 at 3, *with* Doc. 31 at 8.) Thelen alleges that the Severance Agreement is a separate agreement that is the "operative payment promise." (Doc. 31 at 8.) Accepting those well-pleaded allegations as true and drawing reasonable inferences in Thelen's favor at this stage, *Iqbal*, 556 U.S. at 678, I treat the Severance Agreement as a standalone, later-executed agreement for purposes of this Motion.

by reference requires a clear and unequivocal reference and mutual assent to the terms incorporated. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 420 (Ariz. Ct. App. 1983).

Because the Severance Agreement contains no effective choice-of-law provision governing First Health's obligation to make the scheduled DCU installment, Arizona's default choice-of-law rules determine the applicable law. For contract disputes lacking an effective contractual selection of law, Arizona applies the Restatement's "most significant relationship" analysis. *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 907 n.3 (D. Ariz. 2019); *see also Bates v. Superior Court*, 749 P.2d 1367, 1370 (1988). The pertinent contacts include the place of contracting, negotiation, and performance; the location of the contract's subject matter; and the Parties' respective domiciles, residences, places of incorporation, and places of business. Restatement (Second) of Conflict of Laws § 188(2).

At the pleading stage, the relevant contacts support applying North Carolina law to the Severance Agreement's payment obligation. Thelen alleges that he resided in North Carolina, performed the overwhelming majority of his services for First Health from North Carolina, and did so with First Health's knowledge and active facilitation. (Doc. 27 at ¶¶ 1, 9–11.) The Severance Agreement concerns the termination of that North Carolina-based employment relationship and the alleged failure to pay post-termination compensation owed to Thelen at his North Carolina residence.

At this stage, Thelen plausibly alleges that North Carolina has the most significant relationship to the payment obligation at issue. Thelen may consequently bring an NCWHA claim based on First Health's alleged failure to make the $51,999.48 installment promised in the Severance Agreement.

**B. Thelen did not Waive his Wage Claim Under NCWHA**

First Health, however, argues that "Plaintiff has 'waived and released all claims he has or might have against the Company,' including those arising under Arizona state law." (Doc. 32 at 3 (citation modified).) While Paragraph 10 of the Severance Agreement

contains a release and waiver of claims, (*id.*), First Health's release argument fails because the release does not clearly encompass the claim Thelen asserts here. The Parties executed the Severance Agreement on May 2, 2024. (Doc. 27-3 at 1–2.) The agreement provided that the first DCU installment of $51,999.48 would be paid before May 2, 2025. (*Id.* at 1.) Thelen alleges that First Health failed to make that installment when it came due. (Doc. 27 at ¶¶ 20–21, 26–30.) Nothing in Paragraph 10 clearly states that Thelen relinquished claims arising from First Health's future nonperformance of the payment obligation created by the Severance Agreement.

Even if Paragraph 10 could be read to extend beyond the discrimination claims it identifies, First Health's argument fails because Paragraph 10 expressly excludes "claims that cannot be released under applicable law." (*Id.*) *Rehberg v. Flowers Baking Co. of Jamestown, LLC* provides persuasive authority that a general privately obtained release does not bar an NCWHA wage claim. 162 F. Supp. 3d 490, 503–07 (W.D.N.C. 2016). In *Rehberg*, the court observed that the NCWHA is modeled after the FLSA and that the North Carolina Department of Labor looks to federal wage-and-hour interpretations for guidance. *Id.* at 503–04; *see* 13 N.C. Admin. Code 12.0103. Because the FLSA generally prohibits an unsupervised private waiver or settlement of wage claims, and because the NCWHA embodies a public policy protecting wage levels, hours, and the payment of earned wages, the court held that employers may not require employees to waive NCWHA wage-and-hour claims through general releases.[6] *Rehberg*, 162 F. Supp. 3d at 504–07.

First Health has not shown that the release bars Thelen's wage claim, and I next address its argument that severance pay does not constitute wages.

**C. The Severance Payment Constitutes Wages Under the NCWHA**

The NCWHA defines "wage" to include "severance pay" for purposes of the Act's wage-payment provisions. N.C. Gen. Stat. § 95-25.2(16). The statute defines "wage" as

---

[6] The court in *Rehberg* recognized the absence of controlling state appellate authority and noted contrary federal decisions before holding that such releases are unenforceable under the NCWHA. 162 F. Supp. 3d at 503–07.

compensation for labor or services rendered and provides that term includes "sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C. Gen. Stat. § 95-25.2(16).

North Carolina courts apply that definition to contractually promised post-termination compensation. In *Washburn v. Yadkin Valley Bank & Tr. Co.*, the North Carolina Court of Appeals held that an employer's promise to make post-termination salary and bonus payments constituted severance pay and, therefore, wages under the NCWHA. 660 S.E. 2d, 584 (2008). The court explained that the NCWHA specifically includes severance pay within its definition of wages. *Id.*

The Severance Agreement promised Thelen post-termination payments totaling $155,998.44 in three installments of $51,999.48. (Doc. 27-3 at 1.) The agreement was executed in connection with Thelen's termination and set definite payment amounts and deadlines. (*Id.*) Accordingly, Thelen plausibly alleges that the promised installments constitute severance pay—and therefore wages—under the NCWHA. N.C. Gen. Stat. § 95-25.2(16).

**D. First Health's Asserted Good-Faith Dispute Does Not Support Dismissal**

First Health argues that its alleged "good-faith dispute" over Thelen's entitlement to payment warrants dismissal. (Doc. 30 at 6.) It argues that "[u]nder the NCWHA, the existence of a good-faith dispute defeats liability for statutory penalties, liquidated damages, and attorneys' fees, and further undermines the claim as pled." (*Id.*) This argument misapprehends and misstates the role of "good-faith" under the NCWHA. Under N.C.G.S. § 95-25.22(a1), which First Health invokes, (*id.*), the Court may choose not to impose liquidated damages when the employer shows that its failure to make a wage payment "was in good faith and that the employer had reasonable grounds for believing" that its failure to pay was not a violation of N.C. Gen. Stat. § 95-25.22(a1). The statute does not, however, provide that a "good-faith dispute" is a defense to a wage claim. *See* N.C. Gen. Stat. § 95-25.22(a), (a1); *Kornegay v. Aspen Asset Grp., LLC*, 693 S.E.2d 723,

729 (N.C. Ct. App. 2010). Thus, even if First Health ultimately establishes good faith and reasonable grounds, that showing would not itself warrant dismissal of Thelen's claim for unpaid wages.

First Health also argues that it had a "good-faith" basis to withhold the scheduled DCU installment because it discovered unspecified "irregularities and findings" after Thelen's termination. (Doc. 30 at 6.) But the Severance Agreement contains no express condition precedent to the payments, other than Paragraph 10, which provides that Thelen agrees to "conduct [himself] in a professional manner" and cautions that "untoward actions against the Company could result in termination" of the severance payment. (Doc. 27-3 at 2.) Nothing in Paragraph 10 clearly authorizes First Health to withhold the scheduled installment based on unspecified "irregularities and findings" allegedly raised nearly a year after the Parties executed the agreement.

Whether Paragraph 10 creates a condition precedent or otherwise permits First Health to terminate severance payments presents a question of contract interpretation. In any event, Thelen alleges that he conducted himself professionally and did not engage in untoward actions against First Health. (Doc. 27 at ¶¶ 22–25.) He further alleges that First Health provided no facts supporting that assertion despite Thelen's demand, and that First Health invoked the assertion as a pretext to avoid its payment obligation. (*Id.* at ¶¶ 26–28.) At the Rule 12(b)(6) stage, well-pleaded factual allegations are accepted as true. *Iqbal*, 556 U.S. at 678. Whether First Health in fact possessed a good-faith basis for withholding payment—and whether the Severance Agreement's professional-conduct language permitted it to do so—present factual questions unsuited to resolution on a motion to dismiss.

Accordingly, First Health's assertion of a good-faith dispute neither defeats Thelen's plausibly pleaded NCWHA claim nor provides a basis for dismissal.

**E. Thelen's NCWHA Claim is Not Time-Barred**

First Health separately argues that, if Arizona law governs, Thelen's wage claim is barred by Arizona's one-year statute of limitations for liabilities created by statute. First

Health reasons that Thelen's claim accrued no later than his May 2, 2024 termination, yet he did not file this action until May 27, 2025. (Doc. 30 at 7–8.)

That argument fails because North Carolina law governs Thelen's NCWHA claim to the extent the claim arises from First Health's payment obligation under the Severance Agreement. I found that the Severance Agreement is a separate, later-executed agreement that contains no Arizona choice-of-law provision and does not incorporate the Arizona choice-of-law provisions in the Employment Agreement or DCU Agreement, *supra* Section II(A). The relevant alleged breach is First Health's failure to make the first $51,999.48 installment required under the Severance Agreement, not First Health's termination of Thelen's employment. (Doc. 27-3 at 1; Doc. 27 at ¶¶ 20–21, 26–30.)

Under North Carolina law, claims for unpaid wages and benefits under NCWHA must be brought within two years after the cause of action accrues. N.C. Gen. Stat. § 95–25.22(f); N.C. Gen. Stat. § 1-53(2). Thelen alleges that the first installment became due before May 2, 2025, and that First Health failed to pay it when due. (Doc. 27 ¶¶ 20–21, 29–30; Doc. 27-3 at 1.) Thelen alleges that his NCWHA claim accrued, at the earliest, when First Health failed to make that payment—not on the date of his termination one year earlier. Because Thelen filed suit on May 27, 2025, shortly after the alleged May 2, 2025 nonpayment, the claim is timely under North Carolina's two-year limitations period.

Even if Arizona law applied, the claim would be timely. Arizona's one-year limitations period begins when the wage claim accrues, meaning when the employer allegedly fails to pay wages that have become due—not necessarily when the employee's employment ends. First Health promised to make the first installment before May 2, 2025. (Doc. 27-3 at 1.) Thelen filed this action on May 27, 2025, within one year of the alleged failure to make that payment. First Health's argument does not establish, at this stage, that the claim accrued upon termination rather than upon the alleged nonpayment of the later scheduled installment.

Accordingly, First Health's argument that Thelen's wage claim is time-barred fails, regardless of whether the wage claim is brought under Arizona or North Carolina law.

## IV. CONCLUSION

Thelen plausibly alleges that First Health breached a separate, later-executed Severance Agreement and that First Health failed to pay the first installment under that agreement. At this stage, neither the earlier agreements' Arizona choice-of-law provisions, the Severance Agreement's release, First Health's asserted good-faith dispute, nor the asserted statute of limitations establishes a basis for dismissal of Thelen's NCWHA claim.

Accordingly,

**IT IS ORDERED** that First Health's Motion to Dismiss, (Doc. 30), is **denied**.

**IT IS FURTHER ORDERED** that First Health shall answer the FAC.

Dated this 21st day of September, 2026.



Honorable Sharad H. Desai
United States District Judge